UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE,<br><br>              *Plaintiff,*<br><br>      v.<br><br>DEPARTMENT OF DEFENSE, *et al.*,<br><br>              *Defendants*. | Civil Action No. 21-1223 (JEB) |

**DEFENDANTS' COMBINED OPPSITION TO PLAINTIFF'S CROSS-MOTION AND REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Defendants, the U.S. Department of Defense, and its component departments and Service, the Department of the Air Force ("Air Force"), the Department of the Navy ("Navy"), and the United States Marine Corps ("Marine Corps") (collectively, "Defendants"), moved for summary judgment on the basis that the underlying Freedom of Information Act ("FOIA") requests fail to reasonably describe the records sought and thus do not constitute valid FOIA requests.

The three requests at issue are all similarly worded, and all seek "any" records" of "any" component of the identified Military Department or Service "pursuant to" Department of Defense Directive 5200.27. The specific language of each request is as follows: "I request copies of any records from any [Navy/United Air Force/United States Marine Corps] component pursuant to DoD Directive 5200.27, 'Acquisition of Information Concerning Persons and Organizations not Affiliated with the Department of Defense,' between September 18, 2007 and the date of this request." (Compl. ¶¶ 9, 27, 46)  One request was dated July 18, 2019 and the other requests were each dated October 30, 2019. (*Id.*)  Consequently, each request covers a period of approximately twelve years.

The Directive, dating from 1980, establishes the Defense Investigative Program's general policies and operational guidance pertaining to the collecting, processing, storing, and disseminating of information concerning persons and organizations not affiliated with the Department of Defense. (ECF No. 30-3, Jensen Decl., Ex. 2) This directive provides guidance to any Department of Defense office in the world that may deal with issues to which the guidance in the Directive may be applicable. (*Id*. ¶ 4) The Directive does not indicate that it creates a labeling or filing system, nor does it require that information on the activities discussed be labeled with the instruction number. (ECF No. 30-2, Degner-Lopez Decl. ¶ 18) Instead, the Directive is more akin to the Department of Defense's Privacy Act instruction, which discusses the kind of information that would be subject to the Privacy Act and the handling of such information but would not generate records searchable after their retention at one central place, or by any particular search term. (*Id*.)

As established in Defendants' motion, a broadly worded request for "any" record held by "any" component of the identified military Services "pursuant" to the Directive is not a valid FOIA request because it fails to reasonably describe the records sought. Plaintiff's arguments to the contrary fail for the reasons discussed below and as otherwise stated in Defendants' motion.

**I.      The Request is Evaluated as Drafted, Not as Refined in Litigation.**

An agency is "bound to read [the request] as drafted, not as either agency officials or [the requestor] might wish it was drafted." *Miller v. Casey*, 730 F.2d 773, 777 (D.C. Cir. 1984); *see also Am. Ctr. for Law & Just. v. Dep't of Homeland Sec.*, 573 F. Supp. 3d 78, 88 (D.D.C. 2021) (hereinafter, "*American Center*") ("But ACLJ is the master of its request and instead chose to include broad language encompassing many other employees and documents.  The Court must read that request as drafted."). Consequently, Plaintiff's attempt to refine the three FOIA requests in its cross-motion as seeking "two categories" of records (Pl. Mot. at 6) should be rejected. The two categories identified by Plaintiff in its motion, but not in its request, are (1) "policies, orders, procedures, training materials, and similar records that assist DoD staff in implementing the Directive" and (2) "records containing information on non-DoD-affiliated U.S. persons." (Pl. Mot. at 6)

As an initial matter, Plaintiff's three FOIA requests as written are not limited to these two categories.  Instead, they request "any record" of "any component" of the identified military Services that is "pursuant to" the Directive.  As discussed in Defendant's motion, the term "pursuant to" is not self-limiting but is subject to interpretation and might require an understanding of surrounding context or circumstance to apply.  (Def. Mot. at 10)  The requests also are not limited to any particular types of records, or of any particular office or department, but instead covers all "records" of any type that might be implicated by the Directive. *See Am. Ctr.*, 573 F. Supp. 3d at 86 (request failed to reasonably describe records sought because among other things, it was "not at all limited to certain [types of] records").  For instance, the Directive could apply to records created in connection with personnel security screening in which information about individuals other than the subject of the screening, to include individuals not affiliated with the

3

Department, is collected as part of the screening process. (ECF No. 32-2 at ECF p.10, Directive ¶ 4.2) It also could apply to information collected about unaffiliated individuals in connection with a wide range of investigative activities, including those regarding theft, subversion of loyalty, unauthorized demonstrations, civil disturbances, among others. (*Id*. ¶ 4.1.1 to 4.1.7 and § 4.3) Thus, records "pursuant to" the Directive could be encompassed within records categorized under the name of individuals who are affiliated with the Department as well as records about a wide range of investigatory activity categorized by the subject matter of the investigation rather than under an individual's name. (ECF No 30-3, Jensen Decl. ¶ 5) As drafted, the requests are unclear as to where to draw the line within such records as between responsiveness and non-responsiveness, and instead would require a subjective exercise of judgment as to whether a particular record is "pursuant to" the Directive.

In short, based on the language of the FOIA requests, "it is not possible to create a search in response to the request as worded that does not generally entail almost every unit, computer system, personnel file, and file cabinet in the Navy and Marine Corps." (ECF No. 30-2, Degner-Lopez Decl. ¶ 19) Or, as explained by the Air Force, "every Air Force criminal investigative file or similar file maintained at all Air Force installations world-wide would have to be searched in order to determine whether there was any information in the file associated with a non-DoD affiliated person, such as someone who was a witness in a courts-martial or criminal investigation of a military member." (ECF No. 30-3 at ECF p.14) As a result of these numerous overlapping ambiguities ("any record" of "any" component of the identified military Services "pursuant to" the Directive), Defendants are not "able to determine precisely what records are being requested," *Yeager v. DEA*, 678 F.2d 315, 326 (D.C. Cir. 1982), but would need to "speculate" to do so. *Kowalczyk v. Dep't of Just.*, 73 F.3d 386, 389 (D.C. Cir. 1996).

Had Plaintiff wanted "policies, orders, procedures, training materials, and similar records that assist [Defense Department] staff in implementing the Directive" as it states in its motion, it should have specified that in the request. But Plaintiff did not do so, and the relevant requests are the ones submitted, not as refined by Plaintiff's motion.

The "second category" that Plaintiff now identifies—"records containing information on non-DoD-affiliated U.S. persons"—also is not specified in the requests but, had it been so, would merely have underscored the requests' overarching deficiency. The Directive's purpose is to establish for the Defense Investigative Program policies, procedures, and guidance "pertaining to the collecting, processing, storing, and disseminating of information concerning persons and organizations not affiliated with the Department of Defense." (ECF No. 32-2 at ECF p.8, Directive ¶ 1)

As already addressed above, information about non-affiliated persons could be collected in connection with a personnel security screening process of an affiliated person or as part of criminal or other investigative activity (such as relating to a witness in any such investigation). (ECF No. 30-3 at ECF p.14) Such records potentially could contain information "pursuant to" the Directive but that only could be confirmed through a record-by-record review of all such files. (ECF No. 30-3, Jensen Decl. ¶¶ 5-6) (explaining that the referenced Air Force component "does not track individuals, issues or events based on their status as a non-DoD affiliated individual" and that "every potentially responsive criminal investigative file for the time period provided" would need to be reviewed to see if it contains information about individuals not affiliated with the Department). Thus, without a system correlating records to the Directive (ECF No. 30-2, Degner-Lopez Decl. ¶¶ 18-19), records maintained under a person's name or investigative subject matter would not by itself be indicative of whether a record might have information "pursuant to" the

5

Directive. Consequently, a FOIA processor would have no way to structure a search to identify whether such records are "pursuant to" the Directive. (ECF No 30-3, Jensen Decl. ¶ 6) Ultimately, the phrase "pursuant to the Directive" is too broad and ambiguous to reasonably describe the records sought, and thus the FOIA requests are invalid.

Most of Plaintiff's opposition and cross-motion is devoted to a straw man argument that was not raised by Defendants as the basis for claiming the FOIA requests to be invalid. Plaintiff contends that Defendants' position is based on the undue burden of processing the anticipated results that would follow from any search for responsive records. (Pl. Mot. at 8-14) And, in response to that mischaracterization of Defendants' position, Plaintiff relies on case authority addressing the issue of undue burden where search results are voluminous and an observation in that context, sometimes made, that "'the number of records requested' is 'irrelevant to the determination whether they have been 'reasonably described.'" (Pl. Mot. at 10)

But, as Plaintiff itself recognizes, that is a distinct issue from the question of whether a request is so "broad and imprecise that some courts have used the language of 'burden' in connection with the 'reasonably describes' provision," such as "'when it would be unreasonably burdensome for the agency to identify what records are responsive to a FOIA request.'" (*Id*.) Defendants' motion uses the term "burden" in the latter context, which concerns the threshold requirement under the FOIA that a request "reasonably describe" the records sought. (Def. Mot. at 8-9)

## II. Defendants' Attempts to Have Plaintiff Narrow the Request Supports, Rather Than Undermines, Their Motion for Summary Judgment.

Plaintiff attempts to characterize the efforts by the Marine Corps, the Navy, and the Air Force to have Plaintiff narrow its requests as somehow inconsistent with the position taken by the Defendants in their summary judgment motion. (Pl. Mot. at 7–8) That assertion fails for several reasons.

First, FOIA does not impose any obligation on an agency to ask the requester to narrow the FOIA request. *Am. Ctr.*, 573 F. Supp. 3d at 88 ("A request by the Government to narrow the scope of a FOIA request might be 'permissible.' It might even be preferable. But nothing in FOIA requires such an action.") (citations omitted). Instead, the initial burden is on the FOIA requester to submit a request that complies with the requirements of the statute, namely, that the request reasonably describe the records sought. *Id.*

Second, the efforts by the Marine Corps, Navy, and Air Force to have Plaintiff narrow its requests at the administrative stage are not inconsistent with the position taken in their summary judgment motion. The Marine Corps wrote Plaintiff on November 5, 2019, "that a FOIA request must meet certain criteria before it is considered 'perfected', one of which is that it must describe records with sufficient detail to enable us to conduct a search reasonably calculated to identify responsive records. As written, your request is far too broad to be considered perfected." (ECF No. 30-2 at ECF p.13) The Marine Corps suggested that Plaintiff limit its request to a specific Department, namely, the "Intelligence Department, Counterintelligence," and suggested that, with that limitation, the request could be processed. (*Id.*)

Contrary to Plaintiff's assertion, that attempt to narrow, which Plaintiff rejected (*id.*), is not a concession that the phrases "pursuant to" and "any records" are sufficiently clear in the context of the request as submitted. Whether the Marine Corps could have worked with those otherwise

broad and ambiguous terms in the context of a request directed to a specific department is not before the Court. Plaintiff refused to narrow, and thus what is before the Court is a request without any limitation on search location, one that seeks, to the contrary, "any record" of any "component" of the Marine Corps. The Marine Corps characterized that request as "far too broad to be considered perfected," which is the same argument raised in this litigation.

The Navy wrote Plaintiff on December 18, 2019, also explaining that the request as submitted failed to reasonably describe the records sought. (ECF No. 30-2, at 33–34) Although that letter focused on the failure of the request to identify a specific office, nothing in that letter suggested that the Navy considered the phrase "pursuant to" or "any records" sufficiently descriptive in the context of the request as drafted (i.e., without limitation on a search location).

Finally, the Air Force wrote the requester on September 20, 2019, advising that the request was "too vague and broad to adequately target a search to a particular individual who is not affiliated with the Department of Defense." (ECF No. 30-3 at ECF p.14) Again, that position taken during the administrative stage is entirely consistent with the position taken by the Air Force in this litigation.

**III.   The 90-Day Destruction Requirement in the Directive is Irrelevant to the Issue Presented.**

Plaintiff speculates that information "pursuant to" the Directive should be identifiable because the Directive requires the destruction of information within its purview within 90 days unless its retention is required by law or otherwise authorized under some other retention criteria established by the Secretary of Defense. (Pl. Mot. at 6, citing ECF No. 32-2 at 12 § 6.4) But that obligation merely contemplates that a record containing covered information could be identifiable as such by an individual who is contemporaneously handling the specific record within the 90-day period for determining whether to destroy or retain the record. It does not contemplate that a

record containing covered information, once retained in an agency record system by virtue of some other law or retention criteria, could be identified after-the-fact by a FOIA processor as having some connection to the Directive, which is the question presented here by Plaintiff's broadly worded FOIA request seeking any records of any component "pursuant" to the Directive.

In determining whether a request reasonably describes the records sought, "[t]he linchpin inquiry is whether the agency is able to determine precisely what records are being requested." *Yeager*, 678 F.2d at 326 (cleaned up). A request satisfies this standard only where "a professional employee of the agency who was familiar with the subject area of the request [could] locate the record[s] with a reasonable amount of effort." *Truitt v. Dep't of State*, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990). Because that standard has not been met, the FOIA requests are invalid.

### IV. Plaintiff's Speculation About Possible Search Locations is Irrelevant to Whether the Request as Submitted Reasonably Describes the Records Sought.

Plaintiff also speculates about possible locations where responsive records might be located. (Pl. Mot. at 13, citing Eddington Decl. ¶ 12) But that argument begs the question because Plaintiff expressly refused to narrow the scope of its FOIA requests to any specific location. Consequently, whether possible locations exist where there might be responsive records does not respond to the question presented here of whether FOIA requests, not limited to such locations, and utilizing the overly broad terms "pursuant to" and "any record," reasonably describe the records sought. Because such unlimited requests fail to meet that basic requirement of FOIA, they are invalid and summary judgment should be granted on that issue to Defendants.

### V. Response to Plaintiff's Separate Statement of Facts

Pursuant to Local Civil Rule 7(h), Defendants respond to Plaintiff's alleged "Statement of Undisputed Material Facts" (ECF No. 32-3). For the Court's convenience, Defendants recite Plaintiff's assertions below followed by Defendants' response. As set forth more fully below,

Plaintiff's Statement consists of purported facts that are immaterial, lack support in the cited declaration or attachments thereto, and/or are based upon speculation by the declarant, Mr. Eddington, who is not a competent witness to attest to the matters asserted in Plaintiff's Statement.

1. Department of Defense Directive 5200.27 (the "Directive") requires Department of Defense ("DoD") components to destroy information collected pursuant to the Directive unless its retention is required by law or unless its retention is specifically authorized under criteria established by the Secretary of Defense, or his designee. Eddington Decl. Ex. A at 5.

**Response**: Defendants refer the Court to the Directive, and specifically, paragraph 6.4 of the Directive (ECF No. 30-2 at ECF p.47), for a complete and accurate statement of its contents and deny the allegation in this paragraph to the extent inconsistent with the content of the Directive.

2. Defendants and other DoD components possess policies, orders, procedures, training materials, and similar records that assist DoD staff in implementing the Directive. Eddington Decl. ¶ 6.

**Response**: The allegation in this paragraph is not supported by the cited paragraph in the Eddington Declaration, nor in paragraph 11 of that Declaration which purports to attach examples. The cited examples do not on their face establish that they are "policies, orders, procedures, training materials, and similar records that assist DoD staff in implementing the Directive." This allegation also is immaterial to the legal question presented in the parties' cross-motions for summary judgment, which is whether the three FOIA requests as written fail to reasonably describe the records sought.

3.     Policies, orders, procedures, training materials, and similar records that assist DoD staff in implementing the Directive typically cite the Directive. Eddington Decl. ¶ 11; Eddington Decl. Ex. B at 8, Ex. C at 4, Ex. D at A-2, Ex. E at 4, Ex. F at 15, & Ex G at 12, 22, 43.

**Response**:  The allegation in this paragraph is not supported by the cited paragraph in the Eddington Declaration.  The cited examples do not on their face establish that they are "policies, orders, procedures, training materials, and similar records that assist DoD staff in implementing the Directive."  This allegation also is immaterial to the legal question presented in the parties' cross-motions for summary judgment, which is whether the three FOIA requests as written fail to reasonably describe the records sought.

4.     The Air Force likely possesses records containing information on non-DoD- affiliated U.S. persons in the following systems of records and is not reasonably likely to possess such records in any other location: F031 AF SP J: Serious Incident Reports; F071 AF OSI A: Counterintelligence Operations and Collection Records. Eddington Decl. ¶¶ 12a-12b & Exs. H, I.

**Response**:  The allegation in this paragraph is based on Mr. Eddington's speculation and unspecified "research" rather than competent evidence that can support a summary judgment motion.  Plaintiff also offers no competent evidence that potentially responsive records would not potentially exist in other locations as the cited basis, Mr. Eddington's speculation and unspecified "research," is not from a witness competent to make such an assertion.  In addition, the allegation is immaterial to the legal question presented in the parties' cross-motions for summary judgment, which is whether the three FOIA requests as written (which are not limited to any specific location) fail to reasonably describe the records sought.

5. The Navy likely possesses records containing information on non-DoD-affiliated U.S. persons with the following entities and is not reasonably likely to possess such records in any other location: Sensitive Activities Oversight Committee ("SAOC"), Special Programs Review Group ("SPRG"), and Sensitive Activities Review Group ("SARG"). Eddington Decl. ¶¶ 7, 12c-12e; Eddington Decl. Ex. J at 3, Encl. 2 at 2, 3, & Encl. 5 at 1, 3, 6.

**Response**: The allegation in this paragraph is based on Mr. Eddington's speculation and unspecified "research" rather than competent evidence that can support a summary judgment motion. Plaintiff also offers no competent evidence that potentially responsive records would not potentially exist in other locations as the cited basis, Mr. Eddington's speculation and unspecified "research," is not from a witness competent to make such an assertion. In addition, the allegation is immaterial to the legal question presented in the parties' cross-motions for summary judgment, which is whether the three FOIA requests as written (which are not limited to any specific location) fail to reasonably describe the records sought.

6. The Marines likely possess records containing information on non-DoD-affiliated U.S. persons with the following entities and are not reasonably likely to possess such records in any other location: Commanding General and the Senior Intelligence Officer of the Marine Corps Air Ground Task Force Training Command, Marine Air Corps Ground Combat Center, as well as the locations specified in Section 4(c)(2) of Marine Combat Center Order 3800.1C: Intelligence Oversight for Marine Air Ground Task Force Training Command, Marine Corps Air Ground Combat Center (Apr. 26, 2018). Eddington Decl. ¶¶ 12f-12g, 13-14 & Ex. K at 1, 2, 4.

**Response**: The allegation in this paragraph is based on Mr. Eddington's speculation and unspecified "research" rather than competent evidence that can support a summary

judgment motion. Plaintiff also offers no competent evidence that potentially responsive records would not potentially exist in other locations as the cited basis, Mr. Eddington's speculation and unspecified "research," is not from a witness competent to make such an assertion. In addition, the allegation is immaterial to the legal question presented in the parties' cross-motions for summary judgment, which is whether the three FOIA requests as written (which are not limited to any specific location) fail to reasonably describe the records sought.

7. No defendant has conducted a search pursuant to any FOIA request at issue in this case. Eddington Decl. ¶ 13.

**Response**: This allegation is immaterial to the legal issue presented in the parties' cross-motions for summary judgment. Because Plaintiff has failed to issue valid FOIA requests that reasonably describe the records sought, the requests do not trigger any obligation on the part of any Defendant to respond. *Dale v. IRS*, 238 F. Supp. 2d 99, 103 (D.D.C. 2002).

\* \* \*

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' motion, summary judgment should be granted in favor of Defendants, and Plaintiff's cross-motion for summary judgment should be denied.[1]

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: _____/s/_____
JEREMY S. SIMON, D.C. Bar No. 447956
Assistant United States Attorney
601 D. Street, N.W.
Washington, D.C. 20530
(202) 252-2528
jeremy.simon@usdoj.gov

---

[1] The parties agreed that this round of summary judgment motions would be limited to the question of "whether the requests at issue reasonably describe the records sought and otherwise are valid FOIA requests to which a response is required." (ECF No. 29) Accordingly, to the extent the Court were to deny Defendants' motion and grant summary judgment to Plaintiff, Defendants submit that it could only be on that narrow question.