UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CATO INSTITUTE, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF DEFENSE, *et al.*, <br><br> Defendants. | Civil Action No. 21-1223 (JEB) |

MEMORANDUM OPINION

Back in 1980, the Department of Defense issued a set of rules to govern its collection and retention of information about certain non-DoD-affiliated persons. Those rules are codified in DoD Directive 5200.27. To learn more, think tank Cato Institute invoked the Freedom of Information Act and asked DoD and its Departments to hand over "any records from any [Department] component pursuant to" Directive 5200.27. They refused, explaining that they could not tell what the request for records "pursuant to" the Directive meant or how to find such records. Cato then sued them, and both sides now move for summary judgment. Given the poorly formulated nature of Cato's request, the Court will grant Defendants' Motion and deny Plaintiff's.

I.      Background

The following facts are undisputed. Directive 5200.27 authorizes and imposes limitations on DoD's collection of information on persons not affiliated with DoD. See ECF No. 30-2 (Declaration of Lieutenant Alyssa Degner-Lopez), Exh. 10 (Directive). In 2019, Cato issued a request for records to three DoD Departments: the Air Force, Marine Corps, and Navy. See ECF No. 1 (Complaint), ¶¶ 9, 27, 46. Like the parties, the Court at times refers to these

1

Departments as agencies.  See 5 U.S.C. § 551(1) (defining "agency" broadly).  Each request

sought "[c]opies of any records from any [Agency] component pursuant to [the Directive]

between September 18, 2007 and the date of this request."  Id.  That sentence formed the sum

total of each request, and Cato provided no further clarification.  See ECF No. 30-3 (Declaration

of Roxanne M. Jensen), Exh. 1 (Cato Request to Air Force of July 18, 2019); Degner-Lopez

Decl., Exh. 1 (Cato Request to Marine Corps of Oct. 30, 2019); id., Exh. 6 (Cato Request to

Navy of Oct. 30, 2019).  While the Court will provide more detail in Section III.C below, suffice

it to say for now that after some back and forth, Cato refused to modify its request, and each

agency denied it.  See Compl., ¶¶ 15–49.

    With these rejections in hand, Plaintiff next brought this suit against the three agencies

and DoD to compel them to produce responsive records.  See Compl., ¶ 1.  After Defendants

answered the Complaint, the parties agreed to file Cross-Motions for Summary Judgment limited

to "whether the requests at issue reasonably describe the records sought and otherwise are valid

FOIA requests to which a response is required."  ECF No. 29 (Joint Status Report of Oct. 28,

2022).

## II.    Legal Standard

    Challenges to an agency's FOIA responses typically and appropriately are decided on

motions for summary judgment.  See Brayton v. Office of U.S. Trade Rep., 641 F.3d 521, 527

(D.C. Cir. 2011).  Summary judgment may be granted if "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it is capable of affecting the substantive

outcome of the litigation.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the

non-moving party.  See id.; Scott v. Harris, 550 U.S. 372, 380 (2007).  "A party asserting that a

fact cannot be or is genuinely disputed must support the assertion" by "citing to particular . . .

materials in the record" or "showing that the materials cited do not establish the absence or

presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

support the fact."  Fed. R. Civ. P. 56(c)(1).  The moving party bears the burden of demonstrating

the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).

In a FOIA case, a court may grant summary judgment based solely on information

provided in an agency's affidavits or declarations when they "describe the justifications for

nondisclosure with reasonably specific detail, . . . and are not controverted by either contrary

evidence in the record []or by evidence of agency bad faith."  Larson v. Dep't of State, 565 F.3d

857, 862 (D.C. Cir. 2009) (citation omitted).  "Unlike the review of other agency action that

must be upheld if supported by substantial evidence and not arbitrary or capricious, the FOIA

expressly places the burden 'on the agency to sustain its action' and directs the district courts to

'determine the matter de novo.'"  DOJ v. Reporters Comm. for Freedom of the Press, 489 U.S.

749, 755 (1989) (quoting 5 U.S.C. § 552(a)(4)(B)).

## III.    Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency

action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)

(citation omitted).  To further this end, FOIA requires that "each agency, upon any request for

records which (i) reasonably describes such records and (ii) is made in accordance with

published rules stating the time, place, fees (if any), and procedures to be followed, shall make

the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A); see also 32 C.F.R.

§ 286.5(a) (DoD regulation requiring requester to "reasonably describe the records sought").

The recipient of a request need not process it until these requirements are satisfied.  See Dale v.

IRS, 238 F. Supp. 2d 99, 103 (D.D.C. 2002).  If a government agency "demonstrate[s] that the

prerequisites for triggering the agency's duties to search and produce responsive records have

not been satisfied" because the request is invalid, "the agency is entitled to summary judgment."

MacLeod v. DHS, No. 15-1792, 2017 WL 4220398, at *6 (D.D.C. Sept. 21, 2017).

The Cross-Motions at issue here dispute whether Cato's requests "reasonably describe

the records sought and thus" whether they are "valid FOIA requests."  ECF No. 30 (Def. MSJ) at

1; ECF No. 33 (Pl. MSJ/Opp.) at 1.  In determining whether a request "reasonably describes" the

records sought, see 5 U.S.C. § 552(a)(3)(A), the agency must read the request "as drafted, not as

either agency officials or [the requester] might wish it was drafted."  Nat'l Sec. Couns. v. CIA,

969 F.3d 406, 410 (D.C. Cir. 2020) (quoting Miller v. Casey, 730 F.2d 773, 777 (D.C. Cir.

1984)).  "The linchpin inquiry is whether the agency is able to determine precisely what records

are being requested."  Yeager v. DEA, 678 F.2d 315, 326 (D.C. Cir. 1982) (citation omitted and

formatting removed).  The question, in other words, is whether "a professional employee of the

agency who was familiar with the subject area of the request [could] locate the record[s] with a

reasonable amount of effort."  Truitt v. Dep't of State, 897 F.2d 540, 545 n.36 (D.C. Cir. 1990)

(citation omitted).  "[B]road, sweeping requests lacking specificity" will not cut it.  SAI v.

Transportation Sec. Admin., 315 F. Supp. 3d 218, 248 (D.D.C. 2018) (citation omitted and

formatting removed).

Cato first defends the language of its request as sufficiently descriptive, then offers a

narrowing construction of sorts, and last contends that the agencies' pre-litigation actions

undermine their case.  The Court takes each argument in turn.

A.      Language of Request

Defendants principally assert that on its face, Plaintiff's request for documents "pursuant

to" the Directive calls for them to "guess blindly what [Cato] really means."  Def. MSJ at 11.

They add that they are unaware of any "records searchable at one central place, nor by any

particular search term" that might point them in the right direction as to what Plaintiff is digging

for.  Id. at 10; see also Degner-Lopez Decl., ¶ 18; Jensen Decl., ¶¶ 4–6.

The Court agrees.  Cato has not asked for records that cite the directive, implement the

directive, or that were created at the directive's behest, all of which would be plausible and

comprehensible requests, even if potentially overbroad.  See ECF No. 36 (Def. Opp./Reply) at 5.

Plaintiff instead requests "copies of any records from any [Agency] component pursuant to" the

Directive.  See Compl., ¶¶ 9, 27, 46 (emphasis added).  That request makes little sense to a

common reader — let alone an agency employee familiar with the myriad ways the Directive

may implicate agency records.  It gives the agencies no way of knowing what relation a record

must have to the Directive to qualify as responsive.

Much like a request for documents "pertaining" to a particular topic — and unlike a

request for documents containing a name or phrase — Cato's request for records pursuant to the

Directive does not tell the agencies what to look for.  See Shapiro v. CIA, 170 F. Supp. 3d 147,

154 (D.D.C. 2016) (distinguishing valid request for documents that cite a topic from invalid

request for documents merely "pertaining to" a topic) (citing Sack v. CIA, 53 F. Supp. 3d 154,

160 (D.D.C. 2014)).  There is, after all, "a difference in kind between requests for documents

that 'mention' or 'reference' a specified person or topic and those seeking records 'pertaining

to,' 'relating to,' or 'concerning' the same."  Id. at 155.  Cato's "pursuant to" language drops

neatly into the latter bucket.  "Pursuant to," as Defendants point out and as Cato does not contest,

can mean "in carrying out," "in conformity with," or "according to" — not merely containing,

mentioning, or citing.  See "Pursuant to," Merriam-Webster Dictionary,

https://tinyurl.com/2dy4e4p4 (last visited May 1, 2023).

Several decisions in this Circuit have reached the same conclusion.  See Nat'l Sec.

Couns., 969 F.3d at 409–10 (finding request for "all [CIA] records pertaining to the IBM

supercomputer named Watson" unreasonably described) (internal quotation marks omitted); Am.

Ctr. for L. & Just. v. DHS, 573 F. Supp. 3d 78, 85 (D.D.C. 2021) (same when request sought

"documents 'referencing or regarding in any way' eight topics"); MacLeod, 2017 WL 4220398,

at *12 (same when request sought documents with "information relating to" certain topics);

Hainey v. U.S. Dep't of the Interior, 925 F. Supp. 2d 34, 43 (D.D.C. 2013) (same when request

sought documents "relating to vacancy announcements" and "hiring reform") (emphasis

removed); Dale, 238 F. Supp. 2d at 104 (same when request sought "any and all documents,

including but not limited to files, that refer or relate in any way to Billy Ray Dale").

Plaintiff rejoins that some of these decisions emphasized the vague or absent topic of a

request, while the topic of its own request (the Directive) is sufficiently clear.  See Pl. MSJ/Opp.

at 10–11.  The decisions Plaintiff cites, however, merely emphasize the need for clarity

throughout a request, including but not limited to its subject matter.  See, e.g., Freedom Watch,

Inc. v. Dep't of State, 925 F. Supp. 2d 55, 57 61 (D.D.C. 2013) (finding request for "documents

and things that refer or relate to" 63 topical categories unreasonably described in light of

sweeping topics and vagueness of "refer or relate").  To reasonably describe the records it seeks,

Cato must clearly identify what relation those records must have to the topic it has identified.

See Nat'l Sec. Couns., 969 F.3d at 409.  "Pursuant to" does not cut it.

6

B.      Plaintiff's Proposed Reframing

In defense of its request, Cato describes two sets of records that it believes it is at least

entitled to.  See Pl. MSJ/Opp. at 3; ECF No. 32-2 (Declaration of Patrick G. Eddington), ¶¶ 3–4,

6, 11–12.  Cato's argument appears to be that the two sets of records it describes "are

coextensive with Plaintiff's original requests" — in other words, that Cato's two descriptions

here are just more detailed reformulations of what its original request asked for.  See ECF No. 38

(Pl. Reply) at 3.  In assessing the argument so framed, the Court emphasizes that the agencies

were "bound to read" its request "as drafted, not as either agency officials or [Cato] might wish it

was drafted."  Miller, 730 F.2d at 777.  As originally drafted, however, and given that Cato has

refused to modify it, the request cannot be dressed up to resemble the reformulations that Cato

proposes here.  See Nat'l Sec. Couns., 969 F.3d at 410 ("But the request itself was not so

confined, and [the requester] did not refine its request after the [agency] invited it to do so.").

Cato's first reformulation contends that its request should be read as seeking "policies,

orders, procedures, training materials, and similar records that assist DoD staff in implementing

the Directive," and that these records "explicitly cite the Directive" in most cases.  See Pl.

MSJ/Opp. at 3.  Cato spills much ink on Judge Christopher Cooper's decision in this district that

validated a request for "any and all records that were prepared, received, transmitted, collected

and/or maintained by the [agencies] mentioning" Nelson Mandela or one of his aliases.  Shapiro,

170 F. Supp. 3d at 152 (record citation omitted) (emphasis added); see Pl. MSJ/Opp. at 6.  Judge

Cooper explained that "[r]egardless of how onerous it might be to locate them, there can be no

dispute about which items are being requested — records in the CIA's possession that

'mention[]' Nelson Mandela."  Shapiro, 170 F. Supp. 3d at 154.  Since "the subject of Shapiro's

request [wa]s the entirety of each document that mentions Mandela, even if such references are

fleeting and tangential," compliance would "involve virtually no guesswork: A record [wa]s responsive if and only if it contain[ed] Mandela's name" or an obvious descriptor.  Id.

Plaintiff's request, however, does not ask for records that simply "mention" the Directive. It instead asks for records "pursuant to" the Directive.  See Nat'l Sec. Couns., 969 F.3d at 410 ("The request, though, does not say that.").  Compliance with Cato's request, therefore, involves virtually all guesswork because even assuming that the Directive is as identifiable a topic as Mandela's name, the request's "pursuant to" language leaves the agencies guessing how broadly to cast their nets.

Cato's second description of the kinds of records that could be responsive runs into the same problem.  This reformulation is a request for "records containing information on non-DoD-affiliated U.S. persons."  Pl. MSJ/Opp. at 3.  Plaintiff argues that the agencies must have flagged such records as identifiable because "[o]therwise, DoD staff could not feasibly follow the Directive's 90-day destruction requirement."  Id; see Directive § 6.4 (requiring that information on civilian Americans "shall be destroyed" within 90 days unless "required by law" or otherwise "specifically authorized").  To boot, Cato even points to a specific set of systems within each agency that "are likely" to house such records.  See Pl. MSJ/Opp. at 3–4.  This second attempt at recharacterization, however, likewise fails to identify any language in the request itself that asks for records containing information on non-DoD-affiliated U.S. persons.  Even assuming the agencies have identifiably flagged records containing such information, Plaintiff's request does not reasonably describe them.  Because neither of Cato's two proposed formulations actually tracks what its request said, these arguments fail as well.

Although Plaintiff does not tease this out in its briefing, Cato might be making a related but separate point with its proposed reformulations: that even if the request does not clearly

identify the records it seeks, it nonetheless encompasses at least the two sets of documents described above, which the agencies should therefore hand over.  See Pl. MSJ/Opp. at 3 ("Defendants possess two categories of records pursuant to the Directive.").  Even if one could glean from the request that it encompasses some identifiable records that Defendants "possess," agencies need not produce any records in response to a request that flunks FOIA's threshold requirement to "reasonably describe" the records sought.  See Dale, 238 F. Supp. 2d at 103 ("An agency's obligations commence upon receipt of a valid request[.]").  Cato's invalid request triggers no agency obligation to produce responsive records.

As Defendants observe, Cato is no *pro se* litigant.  It is a sophisticated, well-represented organization that has filed at least twelve other FOIA-related lawsuits in this jurisdiction since 2020.  See Def. MSJ at 12 n.4; Electronic Filing System, U.S. District Court for D.C., https://dcd-ecf.sso.dcn/cgi-bin/login.pl (last visited Apr. 20, 2023) (search results for FOIA cases filed by Cato).  Plaintiff "remains free to submit further requests that 'reasonably describe[ ]' the records sought, and that do not require that the agency engage in 'an unreasonably burdensome search.'"  SAI, 315 F. Supp. 3d at 250 (quoting Am. Fed'n of Gov't Emps., Loc. 2782 v. U.S. Dep't of Com., 907 F.2d 203, 209 (D.C. Cir. 1990)).  Because the Court trusts that Cato is capable of meeting this "liberal standard for identification," Truitt, 897 F.2d at 545 (internal quotation marks omitted), it declines to offer Cato any special solicitude by reading its vague request to say more than it does.

As Cato's request does not meet FOIA's "reasonably describes" requirement, the Court "need not analyze whether [Plaintiff's] request violates" similarly worded DoD regulations.  Am. Ctr. for L. & Just., 573 F. Supp. 3d at 82 n.5.

C.        Alleged Inconsistency

As a last resort, Plaintiff contends that Defendants' argument "is inconsistent with their

pre-litigation position," as "neither the Navy nor the Air Force said anything to suggest that

'pursuant to' was unclear," and the Marines already "offered to process the request if Cato

narrowed it — apparently temporarily — to a particular location: the Intelligence Department."

Pl. MSJ/Opp. at 7.  Plaintiff effectively argues that Defendants have shifted their position.  Cato

implies that if it is wrong about that and Defendants found "pursuant to" unclear from the

beginning, they violated agency regulations when they failed to properly inform Cato of that

baseline concern at the start.  See id. at 8; 32 C.F.R. § 286.5(a) (requiring DoD Departments to

"inform the requester what additional information is needed or why the request is otherwise

insufficient").  Cato also implies that if Defendants' objection is indeed a new one, then

Defendants knew all along what the request was asking and are now feigning ignorance.

As an initial matter, Plaintiff does not clarify what it believes to be the consequence —

e.g., waiver? — had the agencies violated the DoD regulation it cites.  Courts in this district,

moreover, sometimes consider an agency's violation of its own notice requirement as merely a

factor in the summary-judgment analysis, while others treat it as nearly dispositive.  Compare

Pinson v. DOJ, 61 F. Supp. 3d 164, 180 (D.D.C. 2015) (describing DOJ's violation of identical

requirement in 28 C.F.R. § 16.3(b) as "[c]asting further doubt on the adequacy" of the agency's

search for responsive records); Kalu v. IRS, No. 14-998, 2015 WL 4077756, at *10 (D.D.C.

July 1, 2015) (similar), with New Orleans Workers' Ctr. for Racial Just. v. ICE, 373 F. Supp. 3d

16, 34 (D.D.C. 2019) (finding that "[D]efendant's failure to follow its own administrative

process" effectively defeated agency's motion for summary judgment); Parker v. DOJ Exec. Off.

for U.S. Att'ys, 852 F. Supp. 2d 1, 14 (D.D.C. 2012) (similar).  In any event, the Court finds no

violation here.  Defendants from the start identified that the request was unclear on its face and

properly informed Cato of that concern, even if they did not specifically quote the "pursuant to"

phrase and even though they raised additional breadth and location-based concerns.

All three agencies notified Plaintiff in one form or another that its request was not

reasonably calculated to identify responsive records.  See Def. Opp./Reply at 7.  As Cato

concedes, the Navy and Marine Corps expressly "used the term 'reasonably described'" in their

denials.  See ECF No. 33-3 (Pl. Resp. to SUMF), ¶ 3.  The Navy informed Plaintiff that the

request failed to "describe the records sought in sufficient detail to enable an employee familiar

with the subject area of the request to locate responsive records with a reasonable amount of

effort."  Degner-Lopez Decl., Exh. 7 (Navy Response Letter of Dec. 18, 2019) at 1.  Although it

asked Cato to "clarif[y] . . . the records requested," id. at 2, Plaintiff instead appealed that

determination, see Degner-Lopez Decl., Exh. 8 (Cato Appeal of Jan. 9, 2020) at 1, after which

the Navy offered to "look[] for ways to assist" Cato by "hav[ing] a few more individuals look at

the [D]irective again to see what other offices might have [t]his information."  Compl., Exh. 9

(Undated Email from Gregory Cason); Degner-Lopez Decl., Exh. 9 (Navy Appeal Decision of

June 21, 2022) (formal denial of appeal issued after Cato commenced lawsuit).  The Marine

Corps similarly informed Cato that the request did not "describe[] records with sufficient detail

to enable [it] to conduct a search reasonably calculated to identify responsive records."  Degner-

Lopez Decl., Exh. 2 (Marines Email of Nov. 5, 2019) at 1.

Plaintiff disputes whether the Air Force informed Cato that the request was not

reasonably described.  See Pl. Resp. to SUMF, ¶ 3.  That Department, apparently assuming that

the request was for documents containing information on specific individuals not associated with

DoD, informed Plaintiff in a letter that the request was "too vague and broad to adequately target

11

a search to a particular individual who is not affiliated with the Department of Defense." Jensen

Decl., Exh. 3 (Air Force Response Letter of Sept. 20, 2019) at 2. The Air Force told Cato that

"in a case in which an Air Force" organization "collected information on such an individual, the

information would usually be maintained under the name of a particular individual/subject." Id.

"Accordingly," the letter continued, "every Air Force criminal investigative file or similar

file . . . world-wide would have to be searched in order to determine whether there was any

information in the file associated with a non-DoD affiliated person." Id. That served as the Air

Force's final decision. See ECF No. 17 (Def. Answer), ¶ 17 (acknowledging "action was not

taken" on Cato's appeal from that decision). Although the Air Force's response is by no means a

model of clarity, that agency, like the others, informed Plaintiff that its request was too vague.

Indeed, it did so even after making a clarifying assumption that the request sought documents

about specific individuals.

Each agency, then, notified Plaintiff that its request was unclear, not reasonably

described, or too vague, making the agencies' responses a far cry from the kind of case in which

an agency "made no effort to confer with plaintiff to resolve any issues at any point prior to

filing its motion." Charles v. United States, No. 21-1983, 2022 WL 951242, at *6 (D.D.C. Mar.

30, 2022) (ruling against agency). In addition, although Cato contends that "Defendants'

declarations are silent on whether agency employees are able to understand" the request, see Pl.

Reply at 3, both declarations reiterate the agencies' core vagueness-based objection. See, e.g.,

Degner-Lopez Decl., ¶ 19 ("Without more information from Plaintiff about the kind of records

he hopes to find, it is not possible to create a search in response to the request as worded . . . .");

Jensen Decl., ¶ 5 ("[T]hat the only guidance provided in the original request was the [Directive]

citation means that [the Air Force] does not have enough information to conduct a reasonable search.").

Contrary to Plaintiff's suggestion, furthermore, an agency's failed attempt to clarify a request does not preclude it from maintaining its vagueness-based objection. The Court appreciates that as part of its initial denial, the Marine Corps suggested that it could process the request if Plaintiff "narrow[ed] the scope of the search for now to just the Intelligence Department, Counterintelligence," as this "would enable [it] to perfect [CATO's] request and begin processing." Marines Email of Nov. 5, 2019, at 1. When Plaintiff refused to do so, however, the Marine Corps "close[d] [the] request," Degner-Lopez Decl., Exh. 3 (Marines Response Letter of Nov. 8, 2019) at 1, and then denied Cato's appeal because the request had not "'reasonably describe[d]' the records sought," adding that it was "too broad" and did "not reasonably describe where to conduct the search." Degner-Lopez Decl., Exh. 5 (Marines Appeal Decision of November 26, 2019) at 1–3 (quoting 5 U.S.C. § 552(a)(3)(A)).

This offer to "begin processing" a reinterpreted, narrowed-down request, however, does not constitute a concession that Cato's request was otherwise reasonably described. Indeed, Cato's own refusal to make the suggested modification could mean that Plaintiff sought something other than, or more than, what the Marine Corps believed it could have been requesting. See Pl. MSJ/Opp. at 7 n.2. The offer at most represents a good-faith effort to guess at what records could be responsive to Cato's unintelligible request — a project no agency need undertake. See Am. Ctr. for L. & Just., 573 F. Supp. 3d at 88 ("That agencies have negotiated the scope of past requests does not graft a new requirement onto FOIA's express terms."). If every agency that attempted to clarify a request thereby "obligate[d]" itself to fulfilling it, that "nothing-or-all approach" would give agencies "a strong incentive to . . . refuse to make any

13

effort to provide what they reasonably can." SAI, 315 F. Supp. 3d at 250 (discussing agency's

production of limited set of records it believed would be responsive).

The Court also recognizes that each agency further identified the request as imposing a

burdensome search or as failing to identify a particular location where records could be found.

An agency, however, does not waive one objection to the request merely by identifying another.

Instead, the agencies' additional protests merely support their overarching objection to the

vagueness of the request.  This conclusion, of course, is no assessment of the merits of the

objection that the request, even once clarified, may be too broad.  See Def. MSJ at 10.  The Court

refrains from considering that intertwined argument before Cato has had the chance to refine its

request and before the agencies have detailed the burden a search responsive to a refined request

may pose.  See Keeping Gov't Beholden, Inc. v. DOJ, No. 17-1569, 2021 WL 5918627, at *5

(D.D.C. Dec. 13, 2021) ("It is the agency's burden, when claiming a search to be unreasonably

burdensome, to 'provide sufficient explanation as to why such a search would be unreasonably

burdensome.'") (quoting Nation Mag. v. U.S. Customs Serv., 71 F.3d 885, 892 (D.C. Cir.

1995)).  For now, the Court merely cautions Cato that although "the number of records requested

appears to be irrelevant to whether a FOIA request is sufficiently specific," where "it would be

unreasonably burdensome for the agency to identify what records are responsive to a FOIA

request, the agency is not obliged to honor that request."  Id. at *6 (citing Yeager, 678 F.2d at

322, 326, then Truitt, 897 F.2d at 545 n.36).

**IV.     Conclusion**

For the foregoing reasons, the Court grants Defendants' Motion for Summary Judgment

and denies Plaintiff's Cross-Motion.  A contemporaneous Order to that effect will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  May 3, 2023